# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# NO. 3:19-CV-552-GCM

| | |
|---|---|
| KAHUNA GROUP, LLC,<br><br>**Plaintiff,**<br><br>v.<br><br>BUNKER CAPITAL, LLC, REMY JACOBSON, & GREGORY BACHRACH,<br><br>**Defendants.** | **ORDER** |

**THIS MATTER** is before the Court on Defendant Gregory Bachrach's Motion to Compel Arbitration and Dismiss the Complaint (Doc. No. 12) and Defendant Remy Jacobson's Motion to Transfer Venue or, in the Alternative, Motion to Dismiss, or, in the Alternative, Motion to Compel Arbitration and Stay Proceedings (Doc. No. 17). Defendants Bachrach and Jacobson (together, "Individual Defendants") seek to transfer this case to the Southern District of Florida ("SDF") or to compel arbitration pursuant to the Master Services Agreement ("MSA") that Kahuna Group, LLC ("Plaintiff") entered into with the Individual Defendants' former employer, Bunker Capital, LLC ("Bunker Capital").

## I. DISCUSSION

### A. Transfer

Defendant Jacobson seeks transfer of this case to the SDF. Under 28 U.S.C. § 1404(a), a district court may, "for the convenience of parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought." *AC Controls Co. v. Pomeroy Comput. Res., Inc.*, 284 F. Supp. 2d 357, 359 (W.D.N.C. 2003) (internal

quotations omitted). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness . . . which calls on the district court to weigh and balance a number of case-specific factors.'" *Id.* (citing *Stewart*, 482 U.S. at 29) (internal quotations omitted)). Those factors include:

> 1. The plaintiff's choice of forum; 2. The residence of the parties; 3. The relative ease of access of proof; 4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; 5. The possibility of a view; 6. The enforceability of a judgment, if obtained; 7. The relative advantages and obstacles to a fair trial; 8. Other practical problems that make a trial easy, expeditious, and inexpensive; 9. The administrative difficulties of court congestion; 10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and 11. The avoidance of unnecessary problems with conflict of laws.

*Id.* "A court should analyze each of these factors both quantitatively and qualitatively." *Rice v. BellSouth Adver. & Publ. Corp.*, 240 F. Supp. 2d 526, 529 (W.D. N.C. 2002). Further, where there is no forum selection clause, the burden is on the party seeking transfer. *AC Controls*, 284 F. Supp. 2d at 364, 365.

Here, there is no forum selection clause and thus the burden is on Defendant Jacobson to establish that this case should be transferred. *See id.* The first factor favors retention in North Carolina, where Plaintiff filed this case. The second, third, fourth, and eighth factors are equally weighted. Plaintiff is a resident of North Carolina and asserts that it has superior access to proof and is better able to obtain witnesses here. Individual Defendants, who reside in Florida, make similar assertions regarding Florida. While Defendant Jacobson alleges that his Crohn's diagnosis would make travel to North Carolina difficult, Plaintiff provided a declaration stating that Defendant Jacobson "traveled so much he was considering buying a personal aircraft."

The parties agree that the fifth, sixth, and seventh factors are either inapplicable or neutral. The ninth factor moderately favors transfer to Florida, as the SDF appears to be slightly less congested Western District of North Carolina ("WDNC"), by some metrics. The tenth and eleventh factors are equally weighted. It is true that claims brought under the MSA are governed by Florida law and, thus, that there is an interest in having those claims resolved in Florida as well as a potential for conflicts of law if litigation proceeds in North Carolina. However, Plaintiff has also made claims under North Carolina law. Thus, transfer of this case to Florida would not resolve the possibility of conflict. This Court is unwilling to override Plaintiff's decision to bring this case in the WDNC based only on the WDNC's slight congestion when compared to the SDF—Jacobson has failed to meet his burden for transfer.

**B. Arbitration**

The Individual Defendants seek to compel arbitration of this case. The Federal Arbitration Act ("FAA") "ensur[es] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal quotation marks omitted). The FAA reflects a "liberal federal policy favoring arbitration." *Id.* at 339. Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires a litigant to arbitrate if the following four elements are present: (1) the existence of a dispute; (2) an arbitration provision, which purports to cover the dispute; (3) the transaction, which is evidenced by the agreement, involves interstate commerce such that it is governed by the FAA; and (4) the failure of the party opposing arbitration to arbitrate the dispute. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (citing *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

Plaintiff acknowledges that the first, third, and fourth elements are satisfied. However, it alleges that the arbitration provision does not cover this dispute because Bunker Capital, LLC, not the Individual Defendants, was signatory to the MSA. While federal law governs the arbitrability of disputes, courts must look to ordinary state law principles to determine whether an arbitration agreement exists between the parties, because arbitration is a matter of contract. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005). Here, the parties agree that Florida state law governs that inquiry. (Doc. No. 12-2, at 6) ("Whether this Court applies Florida law, as required by the MSA, or North Carolina law, is of no moment."); (Doc. No. 18, at 2) ("The MSA includes a choice of law clause which sets for that the MSA shall be governed by the laws of the State of Florida."); (Doc. No. 22, at 2) ("The MSA contains a Florida choice-of-law clause specifying that Florida law applies to its construction, interpretation, and enforcement.").

"Florida and federal courts have recognized that a non-signatory can compel arbitration by a signatory to an arbitration agreement when the underlying proceeding concerns actions allegedly taken by the non-signatory as an agent of a signatory . . . ." *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 944 (Fla. Dist. Ct. App. 2004) (internal citation omitted). A non-signatory agent should be permitted to compel arbitration "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory . . . or when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* (citation and quotations omitted) (emphasis added).

Here, Plaintiff alleges that the Individual Defendants' "conducted substantial activities . . . on behalf of Bunker Capital" and that they are "alter egos of Bunker Capital." Plaintiff also alleges that "the Individual Defendants exercised complete dominion and control over Bunker Capital and made all business and financial decisions on its behalf." Further, Plaintiff explicitly relies on the MSA when stating its claims against the Individual Defendants (nonsignatories to the MSA) and made identical claims of misconduct against Bunker Capital (a signatory to the MSA). Thus, the Court finds that the arbitration provision in the MSA does cover this dispute and that the Individual Defendants have satisfied each of the elements required to compel arbitration.

## II. Conclusion

For the reasons stated above, Defendant Gregory Bachrach's Motion to Compel Arbitration and Dismiss the Complaint (Doc. No. 12) and Defendant Remy Jacobson's Motion to Transfer Venue or, in the Alternative, Motion to Dismiss, or, in the Alternative, Motion to Compel Arbitration and Stay Proceedings are hereby **GRANTED IN PART** and **DENIED IN PART**. This Court declines to transfer this case to the SDF. The parties are ordered to submit this dispute to arbitration administered by the American Arbitration Association in Miami, FL. This case is **STAYED** until arbitration is complete. The parties will provide a status update within 30 days of completion of arbitration.

**SO ORDERED**.

Signed: July 20, 2020

Graham C. Mullen
United States District Judge